FISH v. WOLFE, CARPENTER & ANGLE ET AL.

1. **Contract:** CONSTRUCTION OF: RAILWAY GRADING. A contract for grading a railway provided that the company might relocate its road, and change the grade line if deemed expedient; that whether the work became greater or less by any change that might be made, the contractors should be paid only for the actual work done. The work was divided into sections so as to make the excavation and embankment in each as nearly equal as possible. The line was changed after the contract was made so that a certain number of feet, consisting of excavation, were included in a section wherein they were paid only for embankment: *Held*, that plaintiff, having been once paid for his work, could not demand payment upon a sectional division which would give him more.

*Appeal from Wapello Circuit Court.*

THURSDAY, APRIL 24.

THE defendants Wolfe, Carpenter & Angle contracted with the Burlington & Missouri River Railroad Company to build a portion of its road, including sections 79 and 80. Afterward they sublet the building of the sections named to the plaintiff Fish, and the defendant Neely. During the prog-

ress of the work Fish & Neely took in as a partner the defendant Darlin, and did business under the firm name of Fish, Neely & Co. About the time of the commencement of the work the railroad company made a slight change in the location of the road. A change was also made in the length of sections. What was established as section 79 in the relocated road was made about thirteen hundred feet shorter than the corresponding section in the original survey, while the new section 80 was made about that much longer than the original section 80.

The plaintiff claims that the division between the sections should have been so placed that thirteen hundred feet now embraced in section 80 would have been embraced in section 79, and that the work should be measured and paid for as if the division had been so placed. A controversy in regard to the division between the sections arose between Fish, Neely & Co. and Wolfe, Carpenter & Angle, and was not settled at the time the work was completed. In the meantime Neely and Darlin became apprehensive in regard to the solvency of Wolfe, Carpenter & Angle, and were anxious to arrive at a settlement, and obtain payment of the amount confessedly due. In their anxiety to do so they agreed to give, and did give, upon being paid such amount, a receipt in full, in the name of Fish, Neely & Co., for all work. This was done, however, against the protest of the plaintiff, of which Wolfe, Carpenter & Angle had, at the time, full knowledge. This action was brought to compel Wolfe, Carpenter & Angle to settle with Fish, Neely & Co. for the alleged unpaid balance, and also to adjust some matters between the plaintiff and Darlin. The court found that upon a correct settlement of the amount called for under the contract between the parties there appeared to be an unpaid balance of three thousand two hundred and ninety-seven dollars and sixty cents, and decreed that Wolfe, Carpenter & Angle pay one-third of that amount to the plaintiff. Wolfe, Carpenter & Angle appeal.

*Stiles & Burton* and *Watkins & Williams,* for appellants.

*Stubbs & Leggett* and *H. B. Hendershott,* for appellee.

ADAMS, J.—While Fish, Neely & Co. were paid by the cubic yard, and the same price in both sections, it would have been to their advantage if the division between the sec-

**1. CONTRACT:** construction of railway grading.

to their advantage if the division between the sections had been so placed that thirteen hundred feet of what is now embraced in section 80 had been embraced in section 79. The advantage would have consisted in the fact that the work would have been estimated more favorably to Fish, Neely & Co. Nothing was estimated in section 79 except excavation, and nothing was estimated in section 80 except embankment. Now it happened that in the thirteen hundred feet in question the excavation far exceeded the embankment. It was for the interest, therefore, of Fish, Neely & Co. that the work in the thirteen hundred feet should be estimated in excavation rather than embankment. The plaintiff claims that the sections in the relocated road should have been made coterminous with the respective sections in the original survey. If this had been done it appears that the thirteen hundred feet in question would have fallen in section 79, and the work therein would have been estimated in excavation.

After the work had been let the company could not, of course, require different work to be done, or the acceptance of a mode of measurement less favorable than that originally agreed upon, unless there was something in the contract which authorized the company to make a change. The appellants contend that there was.

The essential provisions of the contract relative to the question in issue were, in substance, that the company might relocate its road and change the grade-line if deemed expedient; that whether the work became greater or less by any change that might be made, the contractors should be paid only for the actual work done, and at the regular prices, ex-

cept that if the average haul was increased the contractors should be paid one cent per cubic yard extra for every hundred feet of extra haul; that for grading the contractors should be paid thirty-two cents per cubic yard; that in estimating the grading they should be allowed only once for the movement of the earth or rock, that is, either as embankment or excavation, and not both for the same earth or rock; that in a given section they should be allowed for that one which exceeded the other in that section, and that the chief engineer of the company should determine which.

It appears from the evidence that upon this road, as upon others, the sections were made for the convenience of letting the grading; that they were generally made each about a mile in length, but sometimes longer and sometimes shorter; that the design is to embrace in each section, as nearly as practicable, the same amount of excavation and embankment, so that a section can be let singly to a contractor, and the grading be done without much borrowing or wasting; that upon the relocation of this road it was found necessary, in order to embrace about the same amount of excavation and embankment in each section, to make section 79 much less than a mile and section 80 much greater. It resulted that the thirteen hundred feet in question, which would have ordinarily been embraced in section 79, was thrown into section 80. But it appears that, notwithstanding section 80 was lengthened so as to include the thirteen hundred feet, consisting mostly of excavation, that section contained an excess of embankment, and, notwithstanding section 79 was shortened so as to exclude the thirteen hundred feet, that section contained an excess of excavation.

The plaintiff claims to be aggrieved because the division between sections 79 and 80 was not so placed as to make the excess of excavation in one, and excess of embankment in the other, still greater. It is not claimed by him that Fish, Neely & Co. have not been paid for all their work once as their contract provided. The mode of estimating neces-

sarily gave them that.   Indeed, if the earth excavated upon section 79 in excess of embankment was used to construct embankment upon section 80, they have been paid twice for such work.   The only result of placing the division between the sections where the plaintiff claims it should have been would have been to give Fish, Neely & Co. double pay for still more work.

Now we see nothing in the contract which justifies this claim.   The plaintiff insists that, under their contract, they, Fish, Neely & Co., were entitled to a job not less advanta- geous than they would have had if there had been no reloca- tion and no disturbance of sectional divisions.   To this we think it may be said, that when they agreed that a relocation might be made, and that a mode of measurement should be adopted that should, as nearly as practicable, pay them once, and only once, for their work, they precluded themselves from insisting upon a sectional division that should work an entirely different result.   Besides, if we should concede that, in the relocation, they were entitled to a division between their sec- tions that would have made their job not less advantageous than it would otherwise have been, it does not follow that the sections should have been made coterminous with the respec- tive sections in the original survey.   No two lines of road, even near together, would have precisely the same cuts and fills.   To give Fish, Neely & Co. the same excess of excava- tion in one section, and the same excess of embankment in the other, would necessarily have required a change in length. Indeed, the decree of the court below was not based upon the idea that Fish, Neely & Co. were entitled to have the sections in the relocated road made coterminous with the respective sections in the original survey.   The court found that, if they had been so made, Fish, Neely & Co. would have been allowed for nine thousand two hundred and nine cubic yards, for which they were not allowed.   But that fact was not made the basis of the decree.   The decree was based upon a fact

that had no reference to the preservation of identity of length of sections.

The court found that Fish, Neely & Co. should have been allowed for ten thousand three hundred and five cubic yards more than they were allowed. But what length of section would have given that allowance no witness undertakes to state, and probably no one could have stated.

The decree was based solely upon the ground that Fish, Neely & Co. were entitled to be allowed for ten thousand three hundred and five cubic yards more of excess of excavation in section 79, because there was that amount more of excess of excavation in the corresponding section in the original survey. The fact was found from the testimony of one Lalor. He said: "Section 79 was (in the original survey) five thousand three hundred feet long. The change (in sectional division) was made to equalize, approximately, the quantities of excavation and embankment in each section. The difference would amount to ten thousand three hundred and five yards less on the profile as it is than as it was originally."

Now, if Fish, Neely & Co. were entitled to a job under their contract not less advantageous than they would have had if there had been no relocation, and no change of sectional divisions, it does not follow that the decree can be sustained. No detriment was suffered by the change, unless there would have been an advantage in grading the original section 79, by reason of the excess of excavation which would have been in it, and we are unable to say that there would have been. As we understand it, there is not necessarily an advantage to be derived from an excess of excavation. Under some circumstances it seems clear that an advantage would arise. If an adjacent section has an excess of embankment, and the two are let together to the same contractor, and can be graded together without regard to the division between them, and the earth derived from excess of excavation in one can be used for excess of embankment in the other, then, to that

extent, the same work would be measured as excavation in one section, and embankment in the other, and be paid for twice. When, however, in case of excess of excavation earth is to be wasted, and in case of excess of embankment earth is to be borrowed, as must always be the case where a section is graded by itself, and sometimes where it is not, the work would be paid for but once, and we see but little, if any, advantage in the excess. To what extent, if any, it would have been necessary to waste in the original section 79, if it had been graded, the evidence does not show. If we can infer anything from the profile in evidence it appears to us that it would have been necessary to a large extent.

REVERSED.